## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTHERN OHIO

FILED

02 AUG -9 PM 3:59

| | |
|---|---|
| **SELENA D. JOHNSON** <br> c/o 8536 Crow Dr., Ste. GL-38 <br> Macedonia, Ohio 44056 <br><br> Plaintiff, <br><br> v. <br><br> **FRESH MARK, INC.** <br> **d.b.a. CARRIAGE HILL FOODS** <br> 1735 South Lincoln Avenue <br> Salem, Ohio 44460, <br><br> and <br><br> **BRIAN WESS** <br> 6895 Colleen Dr. <br> Youngstown, Ohio 44512 <br><br> Co-Defendants. | CASE NO. <br><br> JUDGE: <br><br> **4:02CV 1576** <br><br> **JUDGE ECONOMUS** <br><br> COMPLAINT <br><br> **MAG. JUDGE GALLAS** |

Plaintiff, SELENA D. JOHNSON, by and through counsel, states for her Complaint the following:

### INTRODUCTION

1. This is a civil rights action brought by an individual against her former employer. Plaintiff SELENA D. JOHNSON (hereinafter "Plaintiff" or "Johnson") was employed by Fresh Mark Inc./Carriage Hill Foods (hereinafter "Carriage Hill"), which is an Ohio meat-packing corporation headquartered in Canton, Ohio, with a production facility situated in Salem, Ohio. Johnson, a pre-operative transsexual woman, suffers from Gender Identity Disorder (hereinafter "GID"), a psychological condition classified under the Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition (hereinafter "DSM-IV").

Often, the only appropriate treatment for GID involves a complete transition from the individual's birth sex and gender to the opposite sex and gender. Defendants interviewed and hired Johnson – as a woman – to work in their Salem facility as a manufacturing worker. Upon receiving a complaint alleging that she was using both the men's and women's restrooms at the facility, Defendants suspended Johnson's employment pending an explanation from Johnson's physician as to 1) whether Johnson was male or female, and 2) whether there was any reason Johnson should have been using restroom or locker facilities of the opposite gender. Johnson, through her legal counsel, informed Defendants that she was neither entirely male nor entirely female, and that it was most appropriate for her to use a women's restroom or, alternatively, a unisex restroom. Despite Johnson's comprehensive answers, Defendants unilaterally determined that Johnson was male and that she would be required to use men's restroom facilities. Johnson responded, again through counsel, advising Defendants that such requirements were not only inappropriate, but that they would put her at risk of serious bodily injury – or worse. Johnson refused to return to work under those conditions, whereupon Defendants constructively discharged her for being absent from work on three consecutive days without reporting.

## PARTIES

2. Plaintiff, Selena D. Johnson, is an individual and a citizen of the State of Ohio with a place of residence in East Liverpool, Ohio.

3. Defendant Fresh Mark Inc./Carriage Hill Foods is a private meat-packing corporation chartered by the State of Ohio and headquartered in Canton, Ohio, with a production facility situated in Salem, Ohio.

2

4. Defendant Brian Wess (hereinafter "Wess") was employed by Carriage Hill in the capacity of Director of Human Resources at all times material to this case.

## CLAIMS

5. Plaintiff asserts the following claims:

   A) <u>Count I - Title 42 United States Code (hereinafter "USC") § 2000e (hereinafter "Title VII") and Ohio Revised Code (hereinafter "ORC") § 4112.02 (A)</u> - for unlawful discrimination on the basis of sex, to include sex stereotyping;

   B) <u>Count II - Title 42 United States Code § 126, the Americans with Disabilities Act (hereinafter "the ADA") and ORC § 4112.02 (A)</u> - for failure to accommodate a disability of which Defendant was put on notice that Plaintiff possessed;

   C) <u>Count III - The Ohio Common-Law Tort of Wrongful Discharge in Violation of Public Policy</u> - for wrongfully discharging Plaintiff on the basis of sex-stereotype non-conformity and/or physical handicap in violation of public policies to the contrary.

## LIABILITY

6. Plaintiff asserts liability for the aforesaid multiple claims against the applicable Defendants, jointly and severally, as follows:

   A) Count I - Carriage Hill and Wess (Wess in both his personal <u>and</u> corporate capacities).

   B) Count II - Carriage Hill and Wess (Wess in both his personal <u>and</u> corporate capacities).

   C) Count III - Carriage Hill and Wess (Wess in both his personal <u>and</u> corporate capacities).

3

## JURISDICTION

7. This Court has jurisdiction over Count I of this action under 42 USC §§ 2000e (a)&(b).

8. This Court has jurisdiction over Count II of this action under 42 USC §§ 12101 et seq.

9. This Court has pendent jurisdiction over Counts I and II of this action, which are statutory causes of action under ORC §§ 4112.02 (A)(E)(I) and (J).

10. This Court has pendent jurisdiction over Count III of this action, which is a tort claim under Ohio Common Law.

## STATEMENT OF FACTS

11. The Plaintiff was born on January 26, 1976, and was designated as male based solely upon a cursory genital examination, as was then the common practice for neonatal sex determination.

12. Since 1993 Plaintiff has lived continuously and without interruption as a person of the female gender in all aspects of daily life, congruent with her prescribed treatment plan and the requirements and protocols of the international standards of care for transsexuals.

13. Specialized scientific research in recent years indicates that GID (aka "Transsexualism") is not a choice, a personality disorder, or a form of psychosis. Rather, GID has been shown to be a congenital developmental anomaly, occurring in the earliest weeks of fetal development. In GID, that portion of the brain which is understood to regulate gender identity develops structurally in accordance with one gender, while the rest of the body develops genetically and physically the opposite.

14. On June 15, 1998, Plaintiff legally changed her stereotypical masculine name to a traditionally feminine one.

15. Johnson was employed by Carriage Hill in the latter's Salem, Ohio, production facility beginning on March 2, 2001.

16. Carriage Hill required Johnson to provide her Ohio driver's license for identification as part of its hiring process. Carriage Hill photocopied Johnson's license and retained one or more copies in Johnson's personnel file. The Ohio Bureau of Motor Vehicles policy with regard to individuals' driver's licenses was, at all times material to this case, to approve assignment of a gender indicator <u>incongruent</u> with an individual's birth-designated sex only upon proof that such individual had undergone complete sex-reassignment surgery. Accordingly, Johnson's Ohio driver's license indicated her sexgender as male at the time she was hired by Defendants.

17. Upon receipt of allegations that Johnson had used both the women's and men's restrooms at the facility, Wess entered Johnson's personnel file and retrieved the copy of her Ohio driver's license which was kept there. Wess did so for the purpose of ascertaining Johnson's designated sex.

18. On March 27, 2001, Wess met with one or more other individuals at Carriage Hill for the purpose of discussing which restroom Johnson should use.

19. On March 29, 2001, Wess drafted and delivered to Johnson a memorandum informing her of the March 27th meeting. The memorandum also informed Johnson that she was being sent home from work, and that she could return to work only upon receipt of a statement from Johnson's physician stating 1) whether Johnson was male or female, and 2) whether there was any reason Johnson should have been using restroom or locker facilities of the opposite gender.

20. Between April 17 - 19, 2001, Johnson, through counsel, informed Carriage Hill both directly and through their own counsel that she was neither entirely male nor entirely female, and that it was most appropriate for her to use a women's restroom or, alternatively, a unisex restroom.

21. Despite Johnson's comprehensive answers, Defendants informed Johnson, in a letter dated April 24, 2001, that they had determined her gender to be male based upon her state issued ID, and that she would be required to use men's restroom facilities.

22. In a letter dated May 1, 2001, Johnson again responded through counsel, advising Defendants that such requirements were not only inappropriate, but that they would put her at risk of serious bodily injury – or worse.

23. Fearing for her own safety and well-being, Johnson refused to return to work under the condition that she use the men's restroom facilities, whereupon Defendants constructively discharged her for being absent from work on three consecutive days without reporting.

24. Johnson was granted the right to bring this suit by the U.S. Equal Employment Opportunity Commission in a letter dated May 9, 2002 and received by Plaintiff May 11, 2002.

25. As a direct result of the Defendants' actions, Johnson suffered loss of wages, as well as emotional distress, anxiety, depression, humiliation, and extreme embarrassment.

## COUNT I - TITLE VII: SEX DISCRIMINATION

26. Plaintiff repeats the allegations contained in Paragraphs 1-25 of this Complaint and incorporates them herein.

27. Carriage Hill is an "employer" under 42 USC § 2000e(b) and ORC § 4112 for the purposes of this action.

28. Wess is an "employer" under ORC § 4112 for the purposes of this action.

29. Johnson is an "employee" under 42 U.S.C. § 2000e(f) and ORC § 4112 for the purposes of this action.

30. Defendants' requirement that Johnson use men's restroom facilities at Carriage Hill, and their subsequent termination of her employment for failing to work under such conditions, amount to a constructive discharge on the basis of sex in violation of 42 U.S.C. § 2000e-2 which forbids discrimination on the basis of sex - to include sex stereotyping and discrimination against individuals for their failure to conform to expected gender-role norms and behaviors. Defendants either viewed Johnson as a woman who, as a transgendered person formerly identified as male, did not sufficiently conform to the Defendants' expectations of what a woman should look and/or act like, or Defendants considered Johnson to be a man who, as a transsexual "woman" in the midst of transition, likewise failed to sufficiently conform with their gender-role expectations of men.

## COUNT II - ADA FAILURE TO ACCOMMODATE

31. Plaintiff repeats the allegations contained in Paragraphs 1- 30 of this Complaint and incorporates them herein.

32. Carriage Hill is an "employer" under 42 USC § 12111 and ORC § 4112 for the purposes of this action.

33. Defendants are a "covered entity" as a person engaged in an industry affecting commerce who has 15 or more employees, or as agents thereof, under 42 USC § 12111 (7) for the purposes of this action.

34. Wess is an "employer" under ORC § 4112 for the purposes of this action.

35. Johnson is an "employee" under 42 USC § 12111 and ORC § 4112 for the purposes of this action.

36. Johnson's Gender Identity Disorder results from a physical impairment and therefore is not exempt from coverage under Section 42 USC § 12211(b)(1).

37. Johnson's GID is a physical and/or mental impairment which has substantially limited one or more of her major life activities.

38. Johnson is regarded as having the physical and/or mental impairment of GID.

39. Johnson is a "qualified individual with a disability" under 42 USC § 12111(8) for the purposes of this action.

40. Defendants refused to make "reasonable accommodations" for Johnson - within the definition thereof under 42 USC § 12111(9) - for her disability.

41. Defendants' refusal to reasonably accommodate Johnson's disability was not due to "undue hardship" within the definition thereof under 42 USC § 12111(10).

42. Defendants' behavior toward Johnson indicates that Defendants accurately perceived Johnson's transgendered status and, *a fortiori*, recognized Johnson's disability. Defendants failed to nevertheless provide Johnson with alternative restroom facilities as accommodation of her disability and ultimately constructively discharged Johnson on the basis thereof, in violation of 42 USC §§ 12101 et seq.

## COUNT III - WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

43. Plaintiff repeats the allegations contained in Paragraphs 1-42 of this Complaint and incorporates them herein as if fully rewritten.

44. It is well settled that Ohio adheres to the doctrine of at-will employment. <u>Brzozowski v. Stouffer Hotel Co.</u>, 64 Ohio App. 3d 540 (1989). Pursuant to that doctrine, either party may terminate the employment relationship for any reason not contrary to law. <u>Mers v. Dispatch Printing Co.</u>, 19 Ohio St. 3d 100 (1985). This adherence to the employment-at-will doctrine is not absolute, however.

45. In 1976 the Ohio Supreme Court held that "the right to terminate at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy." <u>Fawcett v. G.C. Murphy & Co.</u>, 46 Ohio St. 2d 245 (1976). More recently, the Ohio Supreme Court has carved out three exceptions to the employment-at-will doctrine, one of which is tortious wrongful discharge in violation of public policy. <u>Greeley v. Miami Valley Maintenance Contrs., Inc.</u>, 49 Ohio St. 3d 228 (1990). The Court further held "that in Ohio, a cause of action may be brought for wrongful discharge in violation of public policy based on sexual harassment/discrimination." <u>Collins v. Rizkana</u>, 73 Ohio St. 3d 65 (1995).

46. In suspending and constructively discharging Johnson from her employment with Carriage Hill on the basis of sex and/or sex stereotypes, Defendants violated the public policy against such discriminatory discharges as expressed in ORC 4112 et seq.

## CONFLICT OF LAWS AND/OR AUTHORITIES

47. Johnson does not make any claim of protected status on the basis of transsexuality *per se* with regard to her Title VII claim. Johnson's claim is instead grounded in the body of sex-stereotyping jurisprudence set forth by the landmark U.S. Supreme Court decision <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), and its progeny. Although Title VII does not prohibit discrimination against transsexuals *per se*, the *Price Waterhouse* line of

9

cases stands for the proposition, *inter alia*, that it is improper to discriminate in employment on the basis of nonconformity with gender norms.

48. Holding that decisions based on sex-typical behavior constitute impermissible sex discrimination, the Court affirmed that "we are beyond the day" when employers may insist that employees "match the stereotype associated with their group [because] 'in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" Id., at 251 citing Los Angeles Dept. of Water v. Manhart, 435 U.S. 702, 707 (1978).

49. Johnson argues herein that her Title VII-based theories of recovery are reasonable and supportable within the current body of the continuing evolution of Title VII sex-discrimination jurisprudence.

50. Johnson's ADA claim is grounded in the Act's specific provision, though inversely stated, allowing recognition as disabilities under 42 USC §12211(b)(1) those gender identity disorders "resulting from physical impairments." Johnson proffers that advances in medical and scientific research in the twelve years since the Act became effective demonstrate that transsexualism is not merely an affirmative behavioral choice but is, in fact, a physically based gender identity disorder. Johnson argues that in light of such scientific developments transsexualism should, accordingly, be recognized as a disability under the ADA, statutory proscriptions against such recognition notwithstanding. Johnson further argues that, inasmuch as all federal common law decisions to date which hold against recognizing transsexualism as a disability were rendered without the benefit of such scientific research and under the plain language of the ADA only, such

10

subsequent advances in scientific and medical knowledge warrant re-examination and modification of the law in light thereof.

## JURY TRIAL DEMAND

51. Johnson respectfully requests a jury trial for any and all issues so triable.

WHEREFORE, the Plaintiff, Selena Johnson, respectfully asks this Court to:

A) Award Plaintiff actual money damages in the amount of $21,000.00;

B) Award Plaintiff compensatory damages in the amount of $300,000.00;

C) Award punitive damages in the amount of $500,000.00;

D) Award Plaintiff any special damages or statutory penalties available under the causes of action from which this Complaint arises;

E) Award Plaintiff attorney's fees and costs; and

F) Order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

*[signature]*

RANDI A. BARNABEE
Federal Practice Attorney
Deborah A. Smith & Co., L.P.A.
Macedonia Professional Building
8536 Crow Drive, Suite GL-38
Macedonia, OH 44064-2013
(330) 467-5000
(330) 467-5001 Fax
DASmithCo@aol.com